## Commonwealth v. Fallon

*James Blackwood, assistant district attorney,* for the Commonwealth.

*Christine D. Chase,* for defendant.

NYGAARD, *J.,* December 19, 1985—Defendant Gary Fallon was convicted by a jury of simple assault and has now filed a motion for a new trial and in the alternative, a motion for arrest of judgment. For the reasons which follow we grant the latter.

An examination of the facts in the light most favorable to the verdict winner, the Commonwealth, reveals the following:

Eugene Walczak, an official from the Children's Services of Erie County, visited defendant's home in his official capacity. He displayed proper governmental identification, and although he had no right to demand entrance to defendant's home, defendant's wife did admit him — he entered — and became a licensee in defendant's home.[1]

---

1. Walczak testified that he went to the home to investigate an alleged child abuse—defendant's use of the traditional hairbrush to spank his daughter. He further testified that it is agency policy that the use of any implement other than the hand (i.e. hairbrush — razor strap — hickory stick, etc.) constitutes abuse. The court does not know where this policy

After a short conversation, in which Walczak revealed the nature of his visit and the agency "policy," defendant picked up Walczak's notebook and slammed it down on the kitchen table and told Walczak to get out of his house. Although it is the policy of Children's Services to leave immediately where the parents object to the continued presence of an agent in their home, Walczak did not leave voluntarily and offered as excuse therefore that he have his notebook returned — first! Defendant told Walczak that once he left his house, the notebook would be returned. Walczak still did not leave.

In the process of ejecting Walczak from his home, defendant at various times, guided, moved, and then actually forceably ejected defendant from his house. Defendant followed Walczak to his automobile, and threw the notebook into the back seat of the car which was parked on defendant's property. Defendant then walked back to his garage and as he was about to shut its door, Walczak, while seated in his car, and for reasons known only to him, said: "Have a nice day."[2] With that, defendant returned to Walczak's car and grabbed, or twisted his arm. Walczak took five to 10 minutes to leave defendant's home after he was first requested, then told, to do so. Furthermore, once Walczak was in his automobile and the notebook had been returned, he remained for an additional period of three to four minutes!

---

comes from, but we herein specifically rebuke it. This court can say from personal experience that the foregoing implements had a very positive affect on his youthful behavior!

2. When defendant testified, the statement was made in a very sarcastic tone of voice. And, even when Mr. Walczak testified, he said it in a sing-song or taunting tone of voice.

Upon these somewhat bizarre facts, defendant was convicted. We now find that it was error to even let this case go to the jury.

First of all, it is absolutely clear that when the official from Children's Services was asked to leave, he no longer had any right nor business whatsoever to remain in defendant's house. When he refused to leave voluntarily, he was no better than a trespasser—a law breaker himself. His refusal to accede to the entirely proper demand of defendant/homeowner invited defendant's response.

The Commonwealth made no efforts to defend the methods employed by Walczak, who was himself an agent of the Commonwealth. A sufficient reason therefor is found in Boyd v. The United States, 116 U.S. 616, 627-630, 29 L. Ed. 476, 6 Sup. Ct. Rep. 524, where the court so eloquently stated:

"The principals laid down in this opinion effect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case there before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employees of the sanctity of a man's home and the privacies of life. It is not the breaking down of his doors and the rummaging of his drawers, that constitute the essence of the offense; it is the invasion of his indefeasible right of personal security, personal liberty and private property."

When Walczak no longer had permission to remain he was required by law to leave. Indeed the guarantees of the Declaration of Rights of the Commonwealth of Pennsylvania, Article I, section 8, are predicated on the statement that: "The people shall be secure in their persons, houses, papers and possessions." Further, the Fourth Amendment to the United States Constitution is also predicated upon

the "right of the people to be secure in their persons, houses, papers and effects. . . ." We believe that the greatest of dangers to this precious and fragile security lurk in any unlicensed encroachment upon this right by agents of our government, whether zealous, well-meaning or meddlesome. ·Indeed, it is the government against whom the constitutional rights of privacy were designed to prevail!

"The makers of our constitution undertook to secure conditions favorable to the pursuit of happiness. They recognize the significance of man's spiritual nature and of his feelings and of his intellect. They knew only that a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be alone—the most comprehensive of rights and the right most valued by civilized men. To protect that right every unjustifiable intrusion by the government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment. (Mr. Justice Brandeis in Olmstead v. The United States, 277 U.S. 438, at 478.)

Mr. Justice Brandeis further went on to say at page 485:

"In the government of laws, the existence of the government will be imperiled if it fails to observe the law scrupulously. Our govenment is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for the law; it invites every man to become a law unto himself; it invites anarchy."

We cannot say it better. For if we permit a governmental agent a violation of the law to accomplish its

ostensible purpose of punishing defendant, then we ratify the acts, and the legal system itself becomes a lawbreaker. We cannot let this happen.

The laws and the courts of our Commonwealth agree. The use of force upon another person is justifiable when an individual believes such force is immediately necessary to prevent or terminate an unlawful entry or other trespass, after first requesting the person to leave. 18 Pa.C.S. §507. Further, the right to defend one's property by eviction of a trespasser, constitutes a defense to an action for assault and battery. Commonwealth v. Zubik, 194 Pa. Commw. 248, 166 A.2d 666 (1960). By the testimony of Walczak himself, forced eviction in this case was necessary. Initially, Walczak was an licensee. This status changed to a trespasser when he was requested to leave and refused to do so. We specifically find that defendant was justified in using force to remove Walczak from his home. He requested Walczak to leave a number of times. Walczak only left when he was escorted, guided and involuntarily forced to leave. Even when Walczak was in his car, and his notebook had been returned to him, he still refused to leave, and was obviously intending to taunt defendant while he still remained on defendant's property. Thus, defendant was in law justified in his actions. "A man's home is his castle and he has a right to protect himself from anyone who unlawfully invades his privacy." Commonwealth v. Strassner, 28 North Cumberland Leg. J. 20 (1956); Commonwealth v. Hinzy, 22 D.&C.3d 501 (1982). It is immaterial to the Commonwealth's case that the intrusion by Walczak was ostensibly for an official purpose. When he refused to leave upon request, he became as much an invader of defendant's liberty as any of the evil-minded rulers who were foremost in the minds of our forefathers who

wrote our constitutions. Indeed experience should have taught us by now, that we must be most alert and on guard to protect liberty when the excuse raised for its violation is "governmental purpose."

Thus we find, as a matter of law, that judgment upon defendant's conviction must be arrested.

## ORDER ON DEFENDANT'S MOTION FOR POST-TRIAL RELIEF

And now, this December 19, 1985, upon consideration of defendant's motion for post-trial relief, the same is hereby granted and judgment upon the verdict entered against the above-named defendant is hereby arrested.